IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

```
JOHNNIE MAE NETTLES,           )
                               )
     Plaintiff,                )
                               )      CIVIL ACTION NO.
     v.                        )       3:08cv186-MHT
                               )          (WO)
MICHAEL J. ASTRUE,             )
Commissioner of the Social     )
Security Administration,       )
                               )
     Defendant.                )
```

OPINION

Plaintiff Johnnie Mae Nettles applied for
supplemental security income benefits under Title XVI of
the Social Security Act, 42 U.S.C. § 1381 et seq.,
claiming that she was unable to work because of a
disability. Her application was denied at the initial
administrative level. She then requested and received a
hearing before an Administrative Law Judge ("ALJ"), who,
following a hearing, also denied the claim. The Appeals
Council accepted Nettles's request for review, but
determined that she was not disabled "for different

reasons than those provided" by the ALJ.  R. at 8.  The Appeals Council's decision became the final decision of the Commissioner of Social Security.  <u>See</u> <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir.  1986).

The case is now before the court for review pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g).  After review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner must be reversed and this case remanded with directions to award benefits.

## I.  Standard of Review

The standard of review of the Commissioner's decision to deny supplemental benefits is a limited one.  The court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); <u>Ingram v. Comm. of Soc. Sec. Admin.</u>, 496 F.3d 1253, 1260 (11th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would

2

accept as adequate to support a conclusion." <u>Richardson</u> <u>v. Perales</u>, 402 U.S. 389, 401 (1971).  A reviewing court looks not only to those parts of the record that support the decision of the ALJ, but the record in its entirety and should take account of evidence which detracts from the evidence relied on by the ALJ.  <u>Hillsman v. Bowen</u>, 804 F.2d 1179 (11th Cir. 1986); <u>see also</u> <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987) ("Despite this limited review, we scrutinize the record in its entirety to determine the reasonableness of the secretary's factual findings." (citation omitted)).

"No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims." <u>Walker</u>, 826 F.2d at 999.

## II.  The Issues

Nettles was 45 years old when she applied for benefits.  R. at 49.  She alleges that she became disabled on October 1, 2003, due to arthritis in her

spine.  R. at 49 and 54.  She completed the eighth grade.
R. at 269.  Her prior work experience includes work as a
janitor, apartment cleaner, and a laundry presser.  R. at
24.  Following the administrative hearing, the ALJ
concluded that Nettles has severe impairments of
"borderline intellectual functioning; degenerative disc
disease L5-S1; Adjustment Disorder with depressed mood;
COPD with tobacco abuse; Rule out alcohol abuse; status
post hysterectomy; and Hypertension."  R. at 22 and 24.
The ALJ concluded she could return to her past work as a
laundry presser.  R. at 24.  In the alternative, the ALJ
concluded that she had the residual functional capacity
to perform other work in the national economy.  Id.
Consequently, the ALJ concluded that Nettles was not
disabled.

The Appeals Council concurred with the ALJ's
determination that Nettles was not disabled, but for
entirely different reasons.  R. at 8.  The Appeals
Council determined that she could not  return to her past

4

relevant work, R. at 8, but, applying the Medical-Vocational Guidelines, 20 C.F.R. 404, Subpt. P., App. 2 ("Grids"), concluded that she was not disabled.  R. at 9-10.

Nettles presents two issues for the court's review: (1) Whether the Appeals Council's finding that she did not suffer from an impairment that meets the Commissioner's Listing of Impairments is supported by substantial evidence. (2) Whether the finding of the Appeals Council that she can perform work which exists in significant numbers in the national economy is supported by substantial evidence.  Pl.'s Br. at 1.

### III.  Discussion

A person is entitled to supplemental security income benefits when the person "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

5

12 months." 42 U.S.C. § 1382c(a)(3)(A). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

To determine entitlement, the Commissioner employs a five-step sequential evaluation:

> "(1) Is the claimant presently unemployed?
>
> "(2) Is the claimant's impairment severe?
>
> "(3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
>
> "(4) Is the claimant unable to perform his or her former occupation?
>
> "(5) Is the claimant unable to perform any other work within the economy?"

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986); see also 20 C.F.R. § 416.920. "An affirmative answer to any of the above questions leads either to the next

6

question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" <u>McDaniel</u>, 800 F.2d at 1030.

Nettles raises two issues related to the court's ultimate inquiry of whether the Commissioner's decision was guided by the proper legal standards and supported by substantial evidence.  The court concludes that the Appeals Council erred by mechanically applying the Grids at step five of the sequential analysis, but the court concludes that a more fundamental error occurred at step three of the analysis.  Accordingly, the court concludes that the ALJ and Appeals Council erred as a matter of law.  Thus, this case is due to be reversed and remanded with directions to award benefits.

### A. Application of the Grids.

Because Nettles suffers from non-exertional impairments that significantly affect her ability to

perform work, the Appeals Council erred as a matter of law by improperly relying on the Grids.

In its analysis, the Appeals Council found that Nettles suffers from "borderline intellectual functioning, degenerative disc disease L5-S1, and adjustment disorder with depressed mood." R. at 9 and 25. The Appeals Council further concluded that her mental impairments impact her functional abilities in that she has "mild limitations in activities of daily living with moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace." R. at 9. In determining Nettles's residual functional capacity, the Appeals Council found that her

> "combination of impairments result in the following limitations on her ability to perform work-related activities: lifting and carrying 20 pounds frequently and 10 pounds occasionally; performing simple, unskilled, repetitive routine work that allows a sit/stand option and requires little independent judgment, with routine changes and no multiple or rapid changes with mild to moderate pain that occasionally interferes with concentration,

8

> persistence and pace; occasionally
> bending, stooping, crawling, climbing,
> crouching, kneeling, and balance;
> restricted from ladders/ropes/scaffolds
> and activities involving unprotected
> heights. In view of the above
> limitations, the claimant has the
> residual functional capacity to perform
> a reduced range of the light exertional
> level."

R. at 9-10.[1]

The Appeals Council then concluded that, "Although the claimant's exertional and non-exertional impairments do not allow [her] to perform the full range of the light exertional level, using the above-cited Rule[2], as a framework for decisionmaking, there are a significant number of jobs in the national economy which [she] could perform." R. at 10. Thus, the Appeals Council relied solely on Rule 202.17 of the Grids to conclude that

---

1.  The ALJ also found that Nettles could perform light work, but noted that the scope of that work is limited by her visual limitations and borderline intellectual functioning with mental limitations. R. at 25. The Appeals Council did not address her visual limitations.

2.  The Appeals Council referenced Rule 202.17, Table 2, 20 C.F.R. 404, Subpt. P., App. 2.

Nettles is not disabled.  The Appeals Council's exclusive reliance on the Grids was erroneous.

"The general rule is that after determining the claimant's [residual functional capacity] and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004).  "However, 'exclusive reliance on the grids is not appropriate either when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills.'" Id. (alteration in original and quoting Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985)). "Therefore, [the court] must determine whether either of these two conditions exists in this case.  If either condition exists, the ALJ was required to consult a vocational expert."  Id.; see also Foote v. Chater, 67

F.3d 1553, 1557 (11th Cir. 1995); <u>Walker</u>, 826 F.2d at 1002-03; <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1202 (11th Cir. 1989); <u>Sryock v. Heckler</u>, 764 F.2d 834, 836 (11th Cir. 1985).

A "full range of employment" has been defined as "being able to do 'unlimited' types of work at a given exertional level." <u>Phillips</u>, 357 F.3d at 1242.  "If the ALJ concludes that [a claimant] cannot perform a full range or unlimited types of work at the sedentary level given her exertional limitations, then the ALJ must consult a vocational expert to determine whether there are significant jobs at the sedentary work level within the national economy that [the claimant] can perform." <u>Id</u>.  "If, however, the ALJ concludes that [the claimant] can perform a full range or unlimited types of work at the sedentary level despite any exertional limitations, the ALJ next must determine to what extent [the claimant's] nonexertional limitations affect her ability to secure employment at the sedentary work level in the

national economy." Id. at 1342-43. Thus, once the Appeals Council found that Nettles suffers from both exertional and non-exertional limitations that affect her residual functional abilities and limit her range of work, the Appeals Council was required to consult a vocational expert and make specific findings of fact regarding Nettles's abilities to perform work before relying on the Grids.

The Appeals Council failed to make the specific findings regarding the severity of the limitations on Nettles's ability to work. Rather, the Appeals Council inappropriately considered Nettles's exertional limitations without considering the nonexertional limitations caused by her mental impairments.

Psychological and emotional limitations, including borderline intellectual functioning, constitute nonexertional impairments that preclude exclusive reliance on the Grids. Allen, 880 F.2d at 1202. Consequently, because the Appeals Council concluded that

12

Nettles suffers from non-exertional impairments that limit her ability to perform a full range of work at the light exertional level, the Appeals Council's failure to make specific findings of fact regarding her impairments and its exclusive reliance on the Grids was erroneous as a matter of law. <u>Phillips</u>, 357 F.3d at 1243-44; <u>Foote</u>, 67 F.3d at 1559; <u>Chester v. Brown</u>, 792 F.2d 129, 132 (11th Cir. 1986).

Generally, such an error would cause the court to remand this case for further proceedings. However, because Nettles is presumptively disabled pursuant to the listing of impairments at 20 C.F.R. 404, Subpt. P, App. 1, § 12.05(C) ("Listing"), the court also finds that the Appeals Council erred by failing to conclude the sequential analysis at step three.

B.  Application of the Listing.

The Listing provides, in pertinent part, that a claimant is disabled if she meets the following criteria:

> "Mental Retardation . . . The required
> level of severity for this disorder is
> met when the requirements in A, B, C, or
> D are satisfied . . .
>
> C.  A valid verbal, performance, or full
> scale I.Q. of 60 through 70 and a
> physical or other mental impairment
> imposing additional and significant
> work-related limitation of function."

20 C.F.R. 404, Subpt. P, App. 1, § 12.05.   The

regulations define mental retardation as "a significantly

sub-average general intellectual functioning with

deficits in adaptive behavior initially manifested during

the developmental period (before age twenty-two)."   Id.

A claimant establishes a disability under § 12.05(C) by

presenting evidence of (1) a sub-average general

intellectual functioning initially manifested prior to

age of 22; (2) valid IQ score of 60 to 70 inclusive; and

(3) evidence of an additional mental or physical

impairment that has more than a 'minimal effect' on the

claimant's ability to perform basic work activities.

Lowery v. Sullivan, 979 F.2d 835 (11th Cir. 1992);

Edwards v. Heckler, 755 F.2d 1513, 1517 (11th Cir. 1985).

14

On December 5, 2002, Dr. Rene Britt, a licensed clinical psychologist, administered to Nettles the Wechsler Intelligence Scale for Adults - III (WAIS-III). R. at 144-49. She obtained a verbal scale I.Q. score of 66, a performance scale I.Q. score of 73, and a full scale I.Q. score of 66. Dr. Britt indicated that Nettles was honest and persistent and put forth good effort during the test; the test results were valid. R. at 148.

On April 20, 2004, at the request of the Social Security Administration, Dr. John Gam, a licensed clinical psychologist, performed a psychological evaluation of Nettles. R. at 189-94. Dr. Gam, like Dr. Britt, administered the Wechsler Intelligence Scale for Adults - III (WAIS-III). Id. Nettles obtained a verbal scale I.Q. score of 65, a performance scale I.Q. score of 73, and a full scale I.Q. score of 65. R. at 191. Although Dr. Gam opined that Nettles "exerted marginal efforts during testing and these test scores should be considered an underestimation of her current level of

cognitive/memory functioning," he assessed her
intellectual functioning as borderline.  R. at 191 and
193.

The Listing does not require evidence of a diagnosis
of mental retardation; rather, the Listing requires first
"a valid verbal, performance, or full scale IQ of 60
through 70."[3]  Both the 2002 and 2004 test results fall

---

3.   The Commissioner is not required to make a
finding of mental retardation based on the results of an
I.Q. test alone.  See Popp v. Heckler, 779 F.2d 1497
(11th Cir. 1986).  In Popp, the Eleventh Circuit Court of
Appeals held that I.Q. test results must be considered in
context with other evidence including the daily
activities and behavior of the claimant. Id. at 1499. If
the Appeals Council concludes from other evidence in the
record that the IQ scores are inconsistent with the
claimant's actual intellectual functioning, the Appeals
Council could have properly found that the claimant does
not meet the criteria of § 12.05.  However, because the
Appeals Council did not consider the test results at all,
let alone in context with the other evidence, the court
concludes that, in this case, the I.Q. scores are an
accurate reflection of Nettles's abilities.  The court
notes that, although Nettles told Dr. Britt and Dr. Gam
that she got good grades, her school records do not bear
that out.  For example, in the sixth grade, Nettles's
grades were all Ds, except for a C in physical education
and a B in art.  R. at 247-48.  In the seventh grade,
Nettles's teacher indicated that she was "a very slow
student." R. at 243.  Finally, in the eighth grade,
(continued...)

16

within the parameters of section 12.05(C).  Thus, Nettles

has the requisite IQ score to meet the first prong of the

listing.[4]

The second prong of the Listing requires "evidence of

an additional mental or physical impairment that has more

than 'minimal effect' on the claimant's ability to

perform basic work activities."  <u>Lowery</u>, 979 F.2d at 837;

<u>Edwards</u>, 755 F.2d at 1517.  The Appeals Council found,

---

3.(...continued)
Nettles earned one C, but the rest of her grades were Ds
and Fs.  R. at 244.

4.   The Appeals Council did not address the validity
of the I.Q. scores.  At the administrative hearing, Dr.
Sydney  Garner,  a  licensed  clinical  psychologist,
testified as a medical expert.  Relying on Dr. Gam's
assessment of Nettles, Dr. Garner opined that Nettles did
not meet Listing 12.05(C) "due to the fact that ... the
record indicates her IQ is in the borderline range.  And
there are no significant impairments in her adaptive
functioning."   R.  at 281.   While  the  ALJ has  some
discretion in accepting other evidence to determine the
validity of test scores, the ALJ may not reject a valid
score.  <u>See</u> <u>Lowery</u>, 979 F.2d at 837.   Dr. Garner does
not reject Nettles's IQ scores as being invalid, but
rather asserts that the high scores indicate "the high
end of mild MR and borderline intellectual functioning."
R. at 282.  Be that as it may, Nettles's scores clearly
fall within parameters established by the Listing.

17

and medical records clearly demonstrate, that Nettles suffers from degenerative disc disease at L5-S1.  R. at 9, 162, 165-66, 179, 182 and 228.  On December 8, 2003, Dr. Dorchak diagnosed her  with degenerative disc disease at L5-S1 and chronic low back pain.  R. at 162.  On examination, Nettles had tender points over the right SI joint, right lumbar region and right sacral area.  Id. A February 2004 MRI of the lumbar spine indicated a mild disc desiccation and narrowing, a minimal posterior bulge at L4-L5, a small central focal disc protrusion at L5-S1 and degenerative narrowing.  R. at 165-66.  A later February 2004 MRI revealed "disc protrusion and degenerative change at L5-S1, but no significant disc herniation or neurocompressive disease."  R. at 179. However, Nettles's condition was not treatable by surgery.  Id.  A September 2005 x-ray indicated "lateral subluxation at L5-S1."  R. at 228.  Finally, at the administrative hearing, Dr. James Anderson, the medical expert, testified that Nettles's physical problems "are

significant and would satisfy the physical aspects of 12.05c." R. at 278. Consequently, based on the evidence in the record, the court concludes that Nettles has additional physical impairments that have more than a minimal impact on her ability to work. Thus, she meets the second prong of the Listing.

Finally, the Listing also requires the mental deficiency to manifest "during the developmental period (before age 22)." 20 C.F.R. 404, Subpt. P, App. 1, § 12.05. "[A] claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age twenty-two, when she presented evidence of low IQ test results after the age of twenty-two." Hodges v. Barnhart, 276 F.3d 1265, 1266 (11th Cir. 2001). "[A]bsent evidence of sudden trauma that can cause retardation, ... IQ tests [after age 22] create a rebuttable presumption of a fairly constant IQ." Id. at 1268.

19

During the administrative hearing, Nettles testified
that she did not complete the ninth grade and does not
have a GED.[5]  R. at 269.  She does not have a driver's
license because she did not pass the written test.  R. at
270.  She can read and write "a little" and do some
simple math.  R. at 272.  She does not know how to use a
calculator.  Id.  When she had to give medication to her
children, her mother would read the instructions to her.
Id.  As previously noted, her school records indicate she
was "a very slow student," and her grades are indicative
of her low intellectual functioning.  R. at 247-48.
Thus, the court concludes that Nettles has met any burden
she may have of establishing that she manifested deficits
in adaptive functioning prior to the age 22.

In this case, Nettles has valid IQ scores between 60
and 70.  The Commissioner's own medical expert testified
that her physical conditions "impos[ed] additional and

_____

5.  Dr. Britt opined to Vocational Rehabilitation
Services that Nettles probably did not have the ability
to pass the GED test.  R. at 149.

20

significant work-related limitation of function" that met the requirements of § 12.05(C).  R. at 278.  Nettles presented sufficient evidence that she manifested deficits in adaptive functioning before age 22. Nonetheless, without reference to the evidence, the Appeals Council concluded that "the evidence does not establish the presence of the 'C' criteria."  R. at 9. Because Nettles has established that she meets the criteria for presumptive disability under Listing 12.05(C), and because the Commissioner has not rebutted that presumption, the court concludes that it is appropriate to reverse the decision of the Commissioner and award benefits to Nettles.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (reversal with award of benefits appropriate where the Commissioner has already considered the essential evidence and it is clear that the evidence establishes disability without any doubt). See also Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir.

1988) (failure to apply the correct legal standards is grounds for reversal and an award of benefits).

***

For the above reasons, the decision of the Commissioner will be reversed and the case remanded to the Commissioner with instructions that benefits be awarded to Nettles.  A separate judgment will enter.

DONE, this the 28th day of September, 2009.

 /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE